## DYKE BROTHERS v. STOKES.

Opinion delivered May 25, 1925.

1. APPEAL AND ERROR──HARMLESS ERROR──ADMISSION OF EVIDENCE.── In a suit on an oral contract of employment, where the issue was as to whether defendants promised to pay to plaintiff a bonus in addition to his salary, it was not prejudicial error to permit plaintiff to testify that there was no possibility of his being mistaken in his version of the contract, where such statement was merely a repetition of his prior statement.

2. CONTRACT──EVIDENCE.──In a suit on an alleged oral contract to pay a bonus in addition to a salary, it was not error to permit plaintiff to testify that he would not have given up his business elsewhere and come back to work for defendants but for such promised bonus, and also that he had contracted debts on the strength of such promise.

3. WITNESSES──CROSS-EXAMINATION.──In a suit upon an alleged oral contract to pay a bonus in addition to a salary where plaintiff testified that he had contracted debts in reliance on such promise; refusal to permit defendants to cross-examine plaintiff as to the specific debts which he contracted in reliance thereon was not error.

4. EVIDENCE──SELF-SERVING DECLARATION.──In a suit to recover a bonus alleged to have been promised in addition to salary, testimony of plaintiff concerning debts contracted in reliance upon

the alleged bonus *held* not in the nature of self-serving declarations.

5. APPEAL AND ERROR—FAILURE TO OBJECT TO LANGUAGE OF INSTRUCTIONS.—A party who does not specifically object in the trial court to the phraseology of an instruction cannot object thereto on appeal.

6. TRIAL—INSTRUCTION SINGLING OUT TESTIMONY.—In a suit to recover a bonus, which plaintiff alleged was to be paid in addition to his regular salary, an instruction that if the circumstances surrounding plaintiff's employment, in addition to the evidence of the appellee as to the contract, constituted a preponderance of the evidence, the verdict should be for plaintiff, *held* not objectionable as emphasizing plaintiff's testimony.

7. TRIAL—REPETITION OF INSTURCTIONS.—Refusal to give requested instructions, fully covered by others given, *held* not erroneous.

8. APPEAL AND ERROR—ORAL INSTRUCTION—HARMLESS ERROR.—In a suit on a contract to pay a certain amount as bonus in addition to a fixed salary, an oral instruction to the jury that their verdict need not be for the full amount claimed, *held* not prejudicial.

9. APPEAL AND ERROR—VERDICT—HARMLESS ERROR.—Defendants cannot complain because a verdict against them was for a less sum than the evidence justified.

Appeal from Sebastian Circuit Court, Fort Smith, District; *John E. Tatum,* Judge; affirmed.

*Warner, Hardin & Warner,* for appellants.

*Cravens & Cravens,* for appellee.

WOOD, J.   This is an action by the appellee against the appellants. Appellee alleged in substance that the appellants entered into a verbal contract with him for employment whereby they agreed to pay appellee, in addition to a fixed salary of $200 per month, a bonus of ten per cent. of the net earnings of appellants' business; that he had received his salary for the year 1922, but had not received the bonus, and that the net earnings of that year were more than $60,000; that the appellants therefore were due the appellee a bonus in the sum of $6,000, for which he prayed judgment.

The appellants answered denying that they had entered into any contract whatever to pay the appellee a bonus, and therefore denied liability.

The testimony on behalf of the appellee tended to prove that Dyke Bros. was a partnership composed of M. T. Dyke, Nathan Dyke, Jr., Frank W. Dyke, and Martin T. Dyke, Jr. The partnership was engaged in the business of retailing building material and manufacturing mill work in Fort Smith and various other places in Arkansas, and at Poteau, Oklahoma. The appellee first began work for the firm in July, 1907, and quit in January, 1920. He was for thirteen years the bookkeeper and cashier, and the last two or three years he was salesman. Part of the time he received a salary of $175 per month, and later the sum of $200 per month. The appellee, after quitting appellants in 1920, went to DeQueen, where he, with others, established a corporation engaged in the lumber business. While appellee was at DeQueen, M. T. Dyke, Sr., requested him at least four times to come back to Fort Smith, and told him that he (Dyke) had been trying to work out a way whereby the appellee, as employee, would share in the profits of the business of appellants to compensate him for the years of service he had given to appellants in the past. While witness was at DeQueen he received for a time a salary of $200 per month as bookkeeper, and the last six months it was reduced to $175 per month. Witness went back to work for the appellants from January 15, 1922, at a salary of $200 per month, and at the end of the year appellants were to give him as a bonus ten per cent. of the net profits of the business. The net profits of the business for the year 1922 were something like $60,000. During the early part of the year 1923 witness asked the appellants about his bonus, and Dyke stated that there would be no bonus for the year 1922, giving as a reason that appellee did not measure up to the standard—didn't give appellants what they thought he would. Appellee replied that they had been a long time saying anything about his not measuring up to the standard, and that they had let him work all that year expecting the bonus, and he told appellants that he was going to quit at once.

Appellee demanded ten per cent. of the $60,000 profits, and the appellants refused to pay it, and appellee instituted this action.

Appellee testified that he gave up his salary and the profits in his business at DeQueen when he returned to Fort Smith the first of the year 1922 to work for the appellants, and, in July of that year, he sold his stock in the corporation at DeQueen. The attorney for the appellee asked him the following question: "Is there any possibility of your being mistaken about Mr. Dyke offering to pay you, in addition to the $200 per month salary, a ten per cent. interest in the profits of Dyke Bros. business, if you would come back and go to work for them?" Appellee answered, "No sir." The appellants objected to the question, the objection was overruled, and they duly excepted. After the appellants closed their case, the appellee was called in rebuttal, and, during the cross-examination, he was asked by his attorney the following:

"Q. Would you have given up your business at DeQueen but for the promise that you were to have ten per cent. of the profits of the business as a bonus?" The appellants objected, the court overruled their objection, and the appellants duly excepted. Thereupon the appellee answered the above question as follows: "I would not; I never would have sold my business and given up my position in DeQueen if he had not promised me that bonus." The appellee was further asked: "Q. Did you contract debts on the strength of the promise of Mr. Dyke that he would pay you this bonus if you came back to work for him?" The appellants objected, the court overruled their objections, and the appellants duly excepted. The appellee then answered the question as follows: "Yes sir." The counsel for appellee then asked appellee when he contracted these debts and what debts he contracted in DeQueen in December. Thereupon the court ruled that it would not allow the witness to go into detail in explaining the debts. Counsel for appellants then stated that they had a right to go into detail as to the debts on

cross-examination. The court ruled that that was not material, and refused to allow appellants' counsel to examine the appellee as to the specific debts contracted in December, stating that it was sufficient that he said he had contracted debts. Appellants objected to the ruling of the court, and excepted thereto.

Appellants categorically denied that there was any contract with the appellee to pay him a bonus, and denied that they had requested him to return to Fort Smith. They admitted that he was employed by them after he returned to Fort Smith. The testimony on behalf of the appellants was to the effect that they never promised a bonus to any one as a part of compensation or salary for services. They had paid some bonuses for twelve or fourteen years, but never promised one to anybody. When given, they were given purely as a reward for good service and not as a contractual obligation. Their testimony was to the effect that they never asked appellee to return from DeQueen, and that appellee asked employment of the appellants on his own initiative, stating that he could not make any money in DeQueen, whereupon the senior member of the firm of appellants told appellee that he (appellee) knew he could always have a job with them at any time. Appellee finally telephoned the senior Mr. Dyke that he wanted to see him, and he came up on a Sunday morning in December. Appellants told him that he could come back, and his salary would be $200 per month. During the former years that appellee had worked for appellants they had always paid him a liberal salary, and he was always satisfied with it. They positively denied that there was anything said about a bonus or interest in the business as a part of appellee's compensation. They did not tell appellee that they would give him the same per cent. of the profits as was received by the sons of the senior members of the firm.

Appellee quit the employ of the appellants in March, 1923. Mr. M. T. Dyke, Sr., described in detail the conversation that he had with the appellee at that time as

follows: "He came into my room and sat down and said, 'Mr. Dyke, I have always come to you when I was in trouble, and you have always helped me out,' and I said, 'What's the trouble, Walter?' and he said he was owing debts which were making him trouble, and showed me a list of debts he owed, and I looked them over and said, 'I have helped you three or four times before, but how in the world have you come to owe so much money?' and he said, 'On account of the sickness of my wife.' We talked for quite a while, and I told him I did not see how I could help him out that much, and he left. Nothing more was said until the following Monday, about 4 o'clock in the afternoon, and he asked me again to help him. He said he had to have money and I said, 'Walter, there is nothing doing,' and he said, 'Well, I have quit,' and I said, 'Do you mean to say you quit on thirty minutes' notice,' and he said, 'I have quit—I have to have money to pay these debts.' "

The witness further testified that he never made a contract with the appellee for a year. He had never in his life made a contract with any person to work for any term whatever. Appellee was to work for $200 per month. Witness further testified that, in the conversation between him and the appellee about appellee's quitting the employment of the appellants, appellee did not then or afterwards say that he had contracted any debts on the strength of the alleged promise to pay him a bonus of ten per cent. of the profits in the business, and the witness denied that any such conversation ever took place.

At the request of the appellee the court gave, among other prayers, instructions Nos. 1 and 2, which in effect told the jury that the plaintiff alleged in his complaint that, on or about the 15th of January, 1922, he entered into a contract with the defendants whereby they agreed to pay him for his services for the year 1922 a salary of $200 per month and in addition thereto ten per cent. of the net profits earned by the defendants in their business; that the burden was on the plaintiff to

establish these allegations by a preponderance of the evidence; that, if the jury believed from the evidence that the contract as set out in plaintiff's complaint was entered into with the defendants, and that his evidence on these material allegations constituted a preponderance of the evidence, their verdict should be in favor of the plaintiff in such sum as the jury should find from the evidence in excess of the sum of $200 per month.

The court also gave appellee's prayer for instruction No. 3, which in effect told the jury that, in determining the greater weight of the evidence, they would take into consideration all the circumstances in connection with the employment, and, if the circumstances surrounding appellee's employment, in addition to the evidence of the appellee as to the contract, constituted a preponderance of the evidence, their verdict should be for the appellee in such sum as the jury might find from the evidence the appellants agreed to pay him for his services in addition to the sum of $200 per month.

The appellants requested the court to instruct the jury, in their prayer for instruction No. 1, to return a verdict in their favor. And in their prayer for instruction No. 2 they requested the court to define to the jury the issues they were to determine. In their prayers for instructions Nos. 3, 4 and 6 they asked the court to instruct the jury that the burden was upon the appellee to establish the alleged contract by a preponderance of the evidence. And in their prayer for instruction No. 5 they asked the court to tell the jury that, if the appellee made an oral agreement with the appellants to employ him for a longer period than one year at a salary of $200 per month and ten per cent. of the net profits earned by the appellants during each year, such agreement, if made, would be within the statute of frauds, and the appellee could not recover.

The court refused the above prayers for instructions, to which rulings the appellants duly excepted.

The court gave appellant's prayer for instruction No. 7, which told the jury that, "if the defendant, M. T. Dyke, did not agree to pay the plaintiff ten per cent. of the net profits earned by the defendants each year, in addition to the salary of $200 per month, then the plaintiff could not recover, and their verdict should be in favor of the defendants."

After the jury retired to consider of its verdict they returned for special instructions, and the following occurred: "The foreman asked the court: 'Do we understand that we have to find for the full amount, if anything?' The Court: 'No, the instructions do not read that way.' Foreman: 'That is the question we want to ask.' The Court: 'We instructed you that if you find for the plaintiff, you will write your verdict, "We, the jury, find for the plaintiff" in any sum you think that the evidence warrants, not exceeding the amount claimed.' Foreman: 'The jury did not understand that.' The Court: 'That is the instruction I gave you. You are not bound to consider the arguments. The evidence and the instructions of the court govern you. They just give their interpretation of the evidence. They are officers of the court, and you have a right to give proper weight to their arguments." Thereupon the court re-read the instructions that had been given to the jury. Counsel for defendants at the time excepted to the rulings of the court. The jury returned a verdict in favor of the appellee in the sum of $3,600. Judgment was entered in appellee's favor for that sum, from which is this appeal.

1. The court did not err in permitting the appellee to state that there was no possibility of his being mistaken in his version of the contract. While the questions and answers were in the nature of an argument, which the court might very properly have refused to allow the appellee to make, nevertheless the statement was a mere reiteration of what the appellee had already testified, and the restatement of his testimony by way of emphasis

and argument could not possibly have prejudiced appellants' rights in the minds of the jury. It is hardly possible that a sensible jury would conclude that a fact once truthfully stated would gain any force by reasseveration. It occurs to us that the repetition of the question and answer might tend to weaken rather than to strengthen the testimony of the appellee.

Nor was there any prejudicial error in permitting the appellee to state, in answer to questions of his counsel, that he would not have given up his business at DeQueen and come back to Fort Smith to work for the appellants but for the promise of the appellants to give him a ten per cent. bonus of the profits of the business in addition to his regular salary, nor in permitting the appellee to state that he had contracted debts on the strength of the promise of the ten per cent. bonus. These questions and answers thereto were during the examination of the appellee in rebuttal to certain conversations which, according to the testimony of M. T. Dyke, Sr., had taken place between himself and the appellee concerning the appellee's last employment by appellants. Dyke testified that the appellee had solicited this employment with the appellants; that, in one of the last conversations before his employment, appellee said that he owed personal bills at DeQueen and could not get out of DeQueen unless the witness would pay the bills, and he told witness he wanted to get some money from witness, and witness let him have $850, and took his stock in the DeQueen corporation as security; that, after that, appellee wrote for $400 more, and witness let him have that; that, in March, 1923, just before the appellee quit the employment of the appellants, he had another conversation with witness in which he said that he was owing a lot of debts that were giving him trouble, and showed witness a list of the debts he owed. Witness looked them over and asked him the situation, and appellee told witness about them. Witness said, "Now, I have always helped you out three or four times before, but how in the

world came you to owe so much money?'' Appellee replied that it was on account of the illness of his wife. Witness finally told him that he didn't see how he could help him out that much. Appellee insisted that he had to have money, and asked witness to help him out. Witness refused, and appellee quit, saying, ''I have quit— I have to have money to pay these debts,'' and he left, and witness had not talked to him since.

In rebuttal of the above testimony of Dyke, Sr., the plaintiff was recalled and testified, without objections, as follows:

''Q. Mr. Dyke stated that you went to him and stated to him that you were in debt and that you had to have money, and asked him to advance you money. If you had a conversation with him about it, tell the jury what you told him? A. He knew my financial condition, and has known it all the time, and I at different times have owed him and borrowed money from him, with as much sickness as I have had in my family for the last ten years or twelve years; and before Christmas we had made some local bills around town, made some purchases that we would not have made under any other circumstances if it had not been that he promised me that percentage. Q. Did you tell Dyke that? A. Yes sir; I asked him at the time that he refused to give me that percentage, I said to him, 'You see now what you have done to me.' Q. What did you tell him that he had done to you? A. How is that? Q. What did you tell him that he had done to you? A. I told him that he had just ruined me, that is all. Q. I will ask you this question. I cannot get you to tell it any other way. Did you tell him that you had made a lot of debts on his promise to give you this profit of the business, ten per cent? A. Yes sir, I did. Q. And that now, as he had refused to pay it, did you tell him what a fix that had gotten you into? Did you tell him that? A. Yes sir.''

When the entire record is considered, it is manifest that the court did not err in admitting the testimony of

the appellee, as above set forth, to which appellants here object. The testimony was proper in rebuttal.

There was no error in the ruling of the court in refusing to permit the appellants to cross-examine the appellee as to the specific debts which he had contracted. The appellants themselves had elicited the fact that the appellee was indebted. It would have been drifting too far afield and would have introduced collateral issues to have permitted a cross-examination as to any specific debts contracted by the appellee. It would have been competent and relevant for appellants to show that the appellee had not contracted any debts in contradiction of appellee's statement to that effect, but such is not the purport of the cross-examination. The court only refused to permit appellants to "go into the details of the debts."

We are convinced that the testimony of the appellee concerning the debts, in the manner and form in which same was elicited, was not in the nature of self-serving declarations, as the appellants contend, and the authorities cited by them bottomed upon that assumption have no application to the testimony of the appellee as above set forth.

2. The court did not err in granting appellee's prayer for instruction No. 1. This instruction was predicated upon the issue raised by the appellee's amended complaint and the answer thereto. The appellee alleged in this amended complaint that the contract as set forth in the original complaint was entered into for the year 1922, and this was denied by the appellants. There was no specific objection by the appellants to the phraseology of this instruction in the trial court, and such objection here therefore cannot avail the appellants. The instruction was not inherently erroneous. The same may be said of instruction No. 3. This instruction does not, as appellants contend, single out and give undue prominence to the testimony of the appellee and emphasize the particular features of the case presented by his testimony. On the contrary, the instruction tells the jury to take into

consideration not only the evidence offered by the plaintiff and the circumstances surrounding his employment, but all the evidence and all the circumstances in the case, and to determine from these where the greater weight of the evidence lies. This instruction, when read in connection with instructions 1 and 2 given on the court's own motion, could not have confused or misled the jury. Instructions 1 and 2 on the court's own motion told the jury in substance that the burden of proof is on the appellee to establish his case by a preponderance of the evidence, and that a preponderance of the evidence means a greater weight of the evidence. There was no error in the rulings of the court in refusing appellants' prayer for instructions numbered from 1 to 6 inclusive. Such of these as were correct were fully covered by instructions which the court gave.

We find no prejudicial error in the ruling of the court in giving the oral instruction or explanation in response to the inquiry of the jury, through their foreman, as to whether the verdict, if in favor of the appellee, would have to be for the full amount claimed by him. This oral instruction was but tantamount to telling the jury that, if they found for the appellee, they should return a verdict in such sum as the evidence warranted, but not exceeding the sum claimed. Since the jury found in favor of the appellee, the appellants cannot complain that the amount of the verdict was less than the jury might have found from the evidence of the appellee. There was evidence to support the verdict. The issues of fact were in sharp conflict, and they were submitted under instructions which, upon the whole, correctly declared the law.

There are no reversible errors in this record. The judgment is therefore affirmed .

Humphreys, J., dissents.